## PAUL IVANESOVICH v. NORTH AMERICAN LIFE AND CASUALTY COMPANY.[1]

February 20, 1920.

No. 21,658.

**Judgment notwithstanding verdict denied.**

    1. In this action on an insurance policy for accidental injury causing hernia, the court did not err in denying the motion of defendant for judgment non obstante.

**Accident insurance.**

    2. The proof made a case of accidental injury under the policy and was one of special indemnity resulting from illness.

[1]Reported in 176 N. W. 502.

**No prejudicial error in rulings.**

3. There was no reversible error in the rulings during the trial.

**False statements in application — questions for jury — increase of hazard.**

4. Under the evidence the court properly left the jury to determine whether, if plaintiff made false statements in his application with regard to having had hernia, it materially affected either the acceptance of the risk or the hazard assumed by the insurer.

**New trial denied.**

5. A new trial on the ground of newly discovered evidence could not be granted on the showing made.

**Damages not excessive.**

6. The claim that the verdict should be reduced is not sustained.

Action transferred to the district court for Hennepin county to recover $350 on defendant's accident insurance policy. The case was tried before Dickinson, J., who at the close of the testimony denied defendant's motion for a directed verdict on the ground that plaintiff had totally failed to make out a cause of action against it, and a jury which returned a verdict for $381.50. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Harry S. Swensen,* for appellant.
*John J. Keefe,* for respondent.

HOLT, J.

The appeal is from an order denying defendant's motion in the alternative for judgment notwithstanding the verdict or a new trial.

The action is upon an accident insurance policy, plaintiff claiming that a timber fell upon him producing double inguinal hernia necessitating a surgical operation. The defense is that when he applied for the insurance he falsely represented that he had not had hernia.

Defendant asserts the record to be conclusive of the fact that prior to his application for insurance plaintiff had been operated on for hernia, hence his representation that he had never suffered therefrom was false and voided the policy. For the present we may assume the consequences of a misrepresentation in the respect charged to be as defendant claims.

But we have carefully considered the evidence and reach the conclusion that whether plaintiff had ever had hernia or had been operated on therefor previous to the injury for which he sues, was for the jury and not the court.

Plaintiff denied point blank that prior to applying for this insurance he had ever had hernia or undergone an operation. Dr. Evert, the surgeon who operated upon plaintiff a few days after the accident in question, testified from memoranda then made that on the right side was a scar and the tissues had been replaced so as to indicate clearly to him that there had been a prior operation for inguinal hernia. The surgeon had no recollection whatever of the operation or what he found except as disclosed by the memoranda. Plaintiff claimed that the scar was from a burn received from molten metal some ten years previous. In this he was corroborated by Dr. Larson who had examined the scar. This medical expert also gave the opinion that the conditions which the surgeon's memoranda indicated as existing might as well have been caused by a burn as by an operation for hernia. Hence, if it be conceded that plaintiff's having hernia prior to his application for the insurance avoided the policy, it yet remained for the jury to determine whether or not he had been thus afflicted. The undisputed physical facts do not unequivocally indicate a prior operation for hernia. It is not a case like Pampusch v. National Council of K. & L. of S. supra, page 71, 176 N. W. 158, where there was no dispute as to the conditions found at a post mortem and no divergence among the expert opinions based thereon. Here defendant's experts could only base an opinion on inferences from notes made by Dr. Evert at a time when the indications of a prior operation were of no particular importance. The scar tissues referred to in the notes were not from a surgeon's knife according to the positive testimony of plaintiff, but resulted from a severe burn. To warrant the rejection of plaintiff's testimony of no prior operation as perjury, for if not true it is not to be excused on the ground of mistake or ignorance, there must be clear proof of such physical conditions that it would compel a unanimous opinion from medical experts that a prior operation for hernia had been had. Such is not the case.

The contention can hardly be taken seriously that plaintiff's claim must arise under a provision of the policy for special disability indemnity, re-

sulting from illness after the policy had been in force 90 days, where the illness originates from or is complicated with certain causes, among them, hernia. If it does, there could be no recovery, for plaintiff was operated on within a month after the insurance was effected. But there is not the slightest testimony to contradict plaintiff's that as he was one of eight men loading onto a car a heavy oak timber 16 feet long and a foot square, used for a railroad switch block, the men having hold of the one end let it drop, and plaintiff at the other end fell backward and against the car with the end of the timber over his lower abdomen; that he was immediately assisted to the bunk-house in the railroad yards and a doctor called; that his abdomen swelled; that his foreman shortly took him to the hospital of the railroad company where the operation took place. The surgeon who performed the operation testified that plaintiff was not in a condition to work before the operation, and disclaimed ability to state when the condition necessitating operation arose. Prior to the time the timber fell on him, plaintiff was actively engaged in his usual work. The evidence clearly places the cause of action under the accident provision of the policy and not under the health provision.

Numerous assignments of error relate to rulings on testimony offered. From Dr. Evert defendant elicited an opinion that plaintiff had had a previous operation for hernia, and also that the ones for which he operated might have existed for months. Surely it was proper cross-examination to inquire of him whether the accident occurring as testified to by plaintiff was not the likely cause of the condition which required the operation performed by the witness. The hypothetical question put to Dr. Larson, plaintiff's expert, calling for an opinion as to whether the conditions Dr. Evert testified his memoranda indicated as existing might as well have been caused by a burn as a prior operation for hernia, properly included the conditions thus testified to by Dr. Evert, and properly excluded the latter's opinions relative to the conditions. Ahern v. Minneapolis Street Ry. Co. 102 Minn. 435, 113 N. W. 1019; Crozier v. Minneapolis Street Ry. Co. 106 Minn. 77, 118 N. W. 256. Neither in the court below nor here did appellant point out wherein the hypothetical question did not incorporate the proper facts fully and correctly. Nor did the giving of such opinion, any more than the giving of the opinion of defendant's medical expert, usurp the function of the jury. It is true, the

jury were to determine whether the alleged accident caused the conditions which subjected plaintiff to the operation, and whether what was found in the old scar tissue indicated a prior hernia or some other injury; but, in order for a jury of laymen to arrive at a corect conclusion on a question wherein their experience was limited, or, perhaps, none at all, it was almost indispensable to call to their aid the opinion of men learned in medical science.

In the application for this insurance plaintiff stated that he had never had any form of some 13 different ailments including hernia, and that he had no physical deformity. The answer pleads the falsity of this representation, and the proof above referred to was to establish that plaintiff was afflicted with hernia when the application was made. The court was requested to instruct the jury that if plaintiff was then suffering from this malady no recovery could be had. But the court left it to the jury to say whether, in case they found that plaintiff had hernia when he obtained the insurance, it was material as affecting "the acceptance of the risk or the hazard assumed." This presents the doubtful proposition in the appeal.

Our statute, section 3527, G. S. 1913, provides that falsity of any statement in the application for insurance shall not bar a recovery unless the "false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer." Whether a false statement materially affects either the acceptance of the risk or the hazard assumed is ordinarily a jury question, with the burden of proof upon the insurer. Johnson v. National Life Ins. Co. 123 Minn. 453, 144 N. W. 218, Ann. Cas. 1915A, 458. There was really no effort on the trial to show that, if plaintiff had been operated on for hernia, the operation itself or the hernia repaired thereby would affect either the acceptance of the risk or the hazard assumed. Indeed, the inference from the testimony of one of the doctors is that a second hernia seldom occurs at the point where a prior one has been repaired, and, again, the medical experts spoke of congenital disposition to hernia, which is not true hernia and may never develop into such. Furthermore, Dr. Evert's testimony that even from the injury received in the accident complete or strangulated hernia was not brought about, in that the sack holding the intestines where the break in the sur-

rounding muscles or integuments occurred did not have to be dissected in the operation he performed. Under this state of the evidence the learned trial court did not err in submitting the question to the jury. We have not held that because one has at some time had a hernia it, as a matter of law, affects his insurable risk or hazard. This is apparent from what is said on the subject in the opinion in Olsson v. Midland Ins. Co. 138 Minn. 424, 165 N. W. 474. The fact that hernia is found in various stages and of different sorts naturally leads to the conclusion that it does not always affect the risk in all insurance contracts.

Under statutes similar to ours, limiting the effect of representations inducing the issuance of insurance, other courts have held it a jury question whether the existence of hernia materially affects the risk or hazard. Levie v. Metropolitan Life Ins. Co. 163 Mass. 117, 39 N. E. 792; Collins v. Casualty Co. of America, 224 Mass. 327, 112 N. E. 634, L.R.A. 1916E, 1203. As bearing upon the questions that the accident produced the injury and that hernia is of various sorts so as to present issues for the jury, see Atlanta Acc. Assn. v. Alexander, 104 Ga. 709, 30 S. E. 939, 42 L.R.A. 188; Thornton v. Travelers Ins. Co. 116 Ga. 121, 42 S. E. 287, 94 Am. St. 99; Berry v. United Commercial Trav. of Am. 172 Iowa, 429, 154 N. W. 598, L.R.A. 1916B, 617, Ann. Cas. 1918A, 706.

A new trial was asked on the ground of newly discovered evidence and it is insisted that the showing entitled defendant to another trial. The affidavits of defendant's attorneys tend to show that a person of plaintiff's name had been insured in another company and had received indemnity for an injury to his thumb. His wife's name was similar to the name of plaintiff's wife. Plaintiff in his application stated that he had no other insurance and never received indemnity for accident. One of the defenses was the falsity of these representations. Defendant also had the affidavit from the agent who adjusted and paid the indemnity for the crushed thumb, stating that he could identify the man to whom it was paid. On the hearing plaintiff presented a later affidavit from this same agent that he had then seen plaintiff who was not the person who had received the indemnity referred to in his former affidavit. It is plain that the court would have abused judicial discretion had a new trial been granted on the ground of evidence newly discovered.

Finally it is claimed that the recovery is too large, hence there must

at least be a reduction. The court below was not requested to reduce the verdict, and this court should not act in the first instance, unless it is quite apparent that appellant would suffer an injustice that could not be remedied. This case is not of that sort. Plaintiff asked for $350 indemnity, but needlessly apportioned the loss between the time he was totally and partially disabled, alleging that by the accident "he has been * * * totally disabled from carrying on his occupation as laborer for a period of four (4) months, and has been partially disabled from carrying on said occupation for a period of six (6) months." Before the trial commenced plaintiff asked leave to amend the complaint by inserting eight months of total disability and three of partial. This was denied. Under the policy there can be a recovery for 52 weeks of total disability at $50 per week, whereas the maximum recovery for partial disability does not exceed three weeks at $25 per week. The court so advised the jury, but said the recovery must be limited to $350 and interest. Nothing was said about four months total disability in the charge and no instruction was requested thereon. The evidence would have justified finding that the accident resulted in more than seven months total disability. This being the record, the trial court would even now be justified in amending the pleading to conform to the proof rather than reduce the verdict.

We discover no reversible error.

Order affirmed.