PAUL J. NELSON v. AUSTIN TRANSIT, INC., AND ANOTHER.

135 N. W. (2d) 886.

June 18, 1965—No. 39,477.

378

*Kenneth K. McMillan,* for appellant.
*Schacht, Kerr & Schacht,* for respondents.

NELSON, JUSTICE.

Plaintiff appeals from an order of the District Court of Mower County denying his motion for a new trial in an action arising out of an accident which occurred on January 15, 1963, in the city of Austin, Minnesota, when a vehicle which plaintiff was driving collided with a bus owned by defendant Austin Transit, Inc., and being driven by one of its employees, defendant Nolan R. Hartley. The record indicates that the accident occurred when plaintiff and defendant, who were traveling in the same direction, decided to make a right turn onto the same street at about the same time. Plaintiff alleges that he suffered injury to his back as a result of the collision.

The facts were in dispute and the trial court submitted the issues of causation, negligence, and contributory negligence to the jury. The jury found for defendants. On appeal plaintiff contends that the trial court erred in permitting cross-examination relative to previous accidents in which he had been involved; injuries he received therein and disabilities resulting therefrom; litigation or settlements resulting therefrom; and the amounts recovered.

There is no claim made on this appeal that the verdict does not have support in the evidence. Actually the only question raised by plaintiff is whether the court erred in permitting counsel for defendant to cross-examine plaintiff relative to the prior accidents in which he had been injured.

It appears from his cross-examination that plaintiff suffered injury to the lower part of his back in an accident in 1953 and commenced a suit which was later compromised and settled satisfactorily to him.

Further cross-examination revealed that from the time of receiving the injury in 1953 plaintiff continued to suffer pain in the lower part of his back, necessitating chiropractic treatments in 1961, and that the pain following the injuries received in the 1953 accident and the accident of January 1963 was nearly identical. Portions of the cross-examination relative to the 1953 accident to which plaintiff objected included interrogation as to the name of the defendant in the lawsuit brought as a result of that accident, the recovery sought, and the settlement arrived at. Plaintiff's objection to that part of the cross-examination which concerned the amount of the settlement was sustained. Plaintiff at no time requested that the questions concerning it be stricken from the record or that the court give any cautionary instruction to the jury.

The cross-examination also disclosed that plaintiff had been injured in another automobile accident occurring in 1961. That accident involved a collision in which plaintiff was injured when his head struck the steering wheel. He claimed that the injuries sustained in 1961 cleared up in about 9 weeks and that he suffered no further effects therefrom. The 1961 accident had caused injury to plaintiff's neck and plaintiff objected to cross-examination about this accident and about any litigation or settlement resulting therefrom, stating as grounds for his objection that he has made no claim in the present action that he suffered any aggravation of a preexisting injury to his neck and that any questions concerning the 1961 accident would be highly prejudicial to him. That objection, however, was overruled, the court stating that plaintiff could have a continuing objection to further cross-examination concerning the 1961 accident. Counsel for defendant thereafter elicited from plaintiff the facts that his complaint in an action based on the 1961 accident alleged that he had suffered permanent injury to the cervical spine; that the doctor who treated him for the injuries he received as a result of the 1961 accident estimated that he had at that time suffered a 7.5-percent permanent disability to his whole spine; and that that action was settled on the basis of his having suffered a permanent disability. Plaintiff also admitted that even though he obtained a settlement on that basis he was not permanently disabled.

Plaintiff was treated by Dr. W. H. Bickel of the Mayo Clinic following the accident of January 15, 1963. A deposition of Dr. Bickel, taken at plaintiff's request, was read into the record. It discloses the following examination by plaintiff's counsel:

"Q. Doctor, do you have an opinion as to whether or not the present condition of Mr. Nelson has any permanent injury?

"A. He has a permanent partial disability, yes.

"Q. And is that to what portion of his body?

"A. To his lower back.

"Q. And will you be able to state as to the degree of permanent partial disability?

"A. I would estimate it to be 20%."

The deposition shows the following cross-examination of Dr. Bickel by defendants' counsel:

"Q. I would like to have you review the history that he gave you again, Doctor, and see if you can find in there any record of his having given you a history of having fallen on March 20, 1953 on a patch of ice, landing on the sidewalk or roadway and injuring his low back.

"A. I don't find he so stated.

"Q. He didn't tell you then that following this fall on February 1 of 1953 he had derived a backache that continued for quite sometime following the fall?

"A. He did not.

\* \* \* \* \*

"Q. Did he give any history of having been in an automobile accident in July, July 30, of 1961?

"A. He did. He stated that—

"Q. What did he say about that?

"A. He did have a cervical spine injury in July of 1961 when he was hit head-on in a car accident, at which time his head snapped forward and hit the steering wheel, but he stated that this trouble cleared up in approximately 9 weeks.

"Q. He told you that condition cleared up in a period of 9 weeks, so that he had no further trouble; is that correct?

"A.    That's correct.

\*    \*    \*    \*    \*

"Q.    He didn't tell you, I take it, that when he saw Dr. Anderson on July 12 of 1962, about a year following the accident, he was complaining of aggravation of neck pain in the shoulder and arm syndrome dating from about May of 1962?

"A.    No, he did not.

"Q.    And he didn't tell you, did he, that Dr. Anderson at that time rated his permanent partial disability as between 5% and 7 5/10% *of his whole spine*?

"A.    No." (Italics supplied.)

■ Concerning the cross-examination of witnesses, this court in Mattfeld v. Nester, 226 Minn. 106, 126, 32 N. W. (2d) 291, 305, 3 A. L. R. (2d) 909, 925, said:

"Generally, a wide range of inquiry should be allowed on cross-examination. But the manner and scope thereof rest largely within the discretion of the trial court, the exercise of which constitutes no ground for reversal except in cases of clear abuse thereof. Schaedler v. New York L. Ins. Co. 201 Minn. 327, 276 N. W. 235; Ivanesovich v. North American L. & C. Co. 145 Minn. 175, 176 N. W. 502.

"The object of all examination of witnesses, both direct and cross, is to elicit facts to show the truth. So long as cross-examination serves that purpose, it should not be restricted, but when it does not it should be stopped."

See, also, 20 Dunnell, Dig. (3 ed.) § 10318; Wiley v. United States (8 Cir.) 257 F. (2d) 900.

Trial courts are vested with a large discretion in determining the allowable latitude of cross-examination relating to collateral matters and their actions will not be disturbed except for clear abuse of discretion. Drew v. Carroll, 120 Minn. 478, 139 N. W. 953; Davis v. United States (8 Cir.) 229 F. (2d) 181, certiorari denied, 351 U. S. 904, 76 S. Ct. 706, 100 L. ed. 1441; Wiley v. United States, *supra*.

■ This court in McGuire v. Village of Caledonia, 140 Minn. 151, 167 N. W. 425, L. R. A. 1918D, 943, points out that ordinarily it is

proper to examine a claimant in a personal injury case as to the fact of having made previous claims for injuries. We also indicated approval of such examination in Zuber v. N. P. Ry. Co. 246 Minn. 157, 74 N. W. (2d) 641.

In Brace v. St. Paul City Ry. Co. 87 Minn. 292, 91 N. W. 1099, this court held that where the plaintiff in a personal injury suit had testified on direct examination concerning the nature and extent of his injury, it was proper upon cross-examination to receive in evidence a letter written by the witness 38 days previously in which he described injuries received in an accident which occurred some time before the accident testified to, as bearing upon the credibility of the witness and the extent of his injury. The accident complained of in the Brace action was alleged to have occurred on January 7 and to have caused a serious injury to plaintiff's knee, while the letter demanded a settlement of $5,000 for a permanent knee injury allegedly suffered in an accident which occurred the previous November.

In an annotation in 69 A. L. R. (2d) 593, 596, the following statement appears:

"Most of the cases in which the question has been raised have held or recognized that the plaintiff may properly be cross-examined as to his previous injuries, physical condition, claims, or actions for injuries similar to that constituting the basis of the present action, for the purpose of showing that his present physical condition is not the result of the injury presently sued for, but was caused, wholly or partially, by an earlier injury or pre-existing condition * * *."

The annotation further points out that the question generally is not one of propriety but of whether the examination was prejudicial to plaintiff. In determining whether it was prejudicial, the question is: Was plaintiff denied a fair trial?

Plaintiff cites Kantor v. Ash, 215 Md. 285, 137 A. (2d) 661, 69 A. L. R. (2d) 585; and Knight v. Hasler, 24 Wis. (2d) 128, 128 N. W. (2d) 407, in support of his contention that the trial court abused its discretion in permitting counsel for defendants to cross-examine him as to prior accidents. In both of the cases cited the appellate court reversed because the cross-examination did not show or attempt to

prove a connection between the injuries sustained in the prior acci-
dents and the one for which a suit for damages had been instituted. That
situation does not, in our opinion, prevail in this case.

The record indicates quite clearly that plaintiff's prior back difficul-
ties were relevant to the degree of disability which he sustained in the
1963 accident. Plaintiff admits that the accident of 1953 was still
causing him pain in 1963 as well as during the years between, and it
appears from the testimony in the record that the physician who treated
him following the 1961 accident estimated that he was then suffering
a 7.5-percent disability to his whole spine. Dr. Bickel felt that plaintiff
has a 20-percent permanent partial disability of his low back, which
the doctor attributed entirely to the injury of January 15, 1963, on the
basis of the history given him by plaintiff. It would appear to us that
when the entire testimony is taken into account defendant's cross-ex-
amination became material and relevant in testing the direct testimony
of plaintiff relative to his prior injuries, both of which affected his
back, and furthermore to establish that plaintiff had not given the full
and complete history of his prior injuries and the disabilities resulting
therefrom to Dr. Bickel.

This court was confronted with a somewhat similar situation in Kel-
sey v. Chicago, R. I. & P. R. Co. 264 Minn. 49, 117 N. W. (2d) 559.
We held in the Kelsey case that in a claim for aggravation of pre-
existing personal injury to the back the amount of a previous settle-
ment for an earlier injury was admissible and that under the circum-
stances disclosed by the record in that case no prejudicial error re-
sulted from its admission. In commenting on the relevance of the evi-
dence, this court made the following comment (264 Minn. 56, 117 N.
W. [2d] 563):

"* * * What influence adverse to plaintiff this evidence may have
had is indeed speculative since the jury need not have reached the
question of damages. If there was any adverse influence, any such ef-
fect could have been diminished or erased if plaintiff had availed him-
self of the opportunity he had to explain the precise nature of his
previous injury as well as the terms of the settlement. Applying the
rule of relevancy in admitting evidence is an exercise of discretion by

the trial court. We find no prejudicial abuse of such discretionary power which would justify a new trial in this case."

■ Over objection plaintiff was cross-examined about the pleadings interposed in actions based on the prior accidents. There can be no dispute that statements in a pleading which are in the nature of admissions are admissible for impeachment purposes where they tend to prove a fact in issue and contradict the testimony of a party relative thereto. Plaintiff's pleadings disclosed the nature of his prior claims and the injuries of which he complained. Thus they became relevant and there was no error in the court's permitting portions of them to be read to the jury. See, Dornberg v. St. Paul City Ry. Co. 253 Minn. 52, 91 N. W. (2d) 178; Carlson v. Fredsall, 228 Minn. 461, 37 N. W. (2d) 744; Krumholz v. Rusak, 230 Minn. 178, 41 N. W. (2d) 177.

■ The evidence obtained by permitting counsel for defendants to elicit from plaintiff the identity of his counsel in the prior suits and the name of the defendant in the 1953 suit—to which plaintiff objected— may well have been wholly immaterial, since it neither served to impeach plaintiff's testimony nor shed light on plaintiff's prior injuries. These were collateral matters, however, and largely subject to the trial court's discretion. The admission of such evidence was not sufficiently prejudicial to require a reversal. See, Waters v. Fiebelkorn, 216 Minn. 489, 13 N. W. (2d) 461; Fewell v. Tappan, 223 Minn. 483, 27 N. W. (2d) 648; Potter v. Potter, 224 Minn. 29, 27 N. W. (2d) 784.

We are bound to hold upon this record that it shows no prejudicial abuse of the trial court's discretionary power in permitting counsel for defendants to cross-examine plaintiff as to prior accidents.

Affirmed.